UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>JOJO'S 10 RESTAURANT, LLC<br><br>Debtor. | Chapter 7<br>Case No. 10-41983-MSH |
| JOJO'S 10 RESTAURANT, LLC,<br><br>Plaintiff<br><br>v.<br><br>DEVIN PROPERTIES, LLC et al,<br><br>Defendants. | Adv. Pro. No. 10-04083 |

**MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before me are the motions for summary judgment of defendant, Devin Properties, LLC ("Devin"), and successor to plaintiff, the Chapter 7 trustee[1] of the bankruptcy estate of JoJo's 10 Restaurant, LLC, the debtor in the main case.

**Procedural Background**

On April 4, 2010, the debtor commenced this case by filing a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. On May 25, 2010, the debtor commenced this adversary proceeding against Devin and four other secured creditors seeking (i) a declaratory judgment avoiding each defendant's security interest in the assets of the debtor for lack

---

[1] The main case was converted from Chapter 11 to Chapter 7 after commencement of this adversary proceeding and the trustee has succeeded to the debtor's interest as plaintiff. *See* procedural background section of this memorandum.

1

of perfection and determining the amount owed to each defendant (Count I), (ii) a judgment avoiding each defendant's security interest pursuant to Bankruptcy Code § 544 (Count II) and (iii) an order preserving for the bankruptcy estate any interest in the avoided liens pursuant to Bankruptcy Code § 551 (Count III). Devin filed an answer and counterclaim seeking a declaratory judgment as to the validity, security and amount of the debtor's obligation to it.

On June 9, 2010, I granted the United States trustee's motion to appoint a Chapter 11 trustee in the main bankruptcy case, and on June 16, 2010 Craig R. Jalbert was appointed. On November 18, 2010, Devin moved for summary judgment on Counts I and II of the complaint. On December 28, 2010, Mr. Jalbert moved for summary judgment against Devin on Counts I and II of the complaint. On January 12, 2011, the main case was converted to one under Chapter 7 of the Bankruptcy Code and Mr. Jalbert was appointed interim Chapter 7 trustee. A hearing on the cross motions for summary judgment took place on January 14, 2011. On February 10, 2011, John A. Burdick, as permanent Chapter 7 trustee, replaced Mr. Jalbert. References in this memorandum to the "trustee" refer to Mr. Jalbert or Mr. Burdick as appropriate.

**Factual Background**

The relevant facts are not in dispute. On May 15, 2009, the debtor and Devin entered into, among other agreements, a commercial lease agreement, an asset purchase agreement, a bill of sale, a promissory note and a pledge agreement by which the debtor leased space and purchased assets in order to operate a restaurant in Devin's building in Maynard, Massachusetts. The equipment sold by Devin to the debtor had been acquired by Devin in connection with a prior restaurant operating at the premises. Devin financed the asset purchase transaction.

Pursuant to the asset purchase agreement, the debtor agreed to pay $285,000 to purchase all of Devin's assets used in the former restaurant including inventory, furniture, fixtures and

2

equipment (the "Physical Assets"). The agreement also provided for the transfer to the debtor of all transferrable licenses issued in Devin's name,[2] including the former restaurant's liquor license issued by the town of Maynard.

In accordance with the asset purchase agreement, the parties executed a bill of sale through which the debtor acquired the assets listed on a schedule similar to the one attached to the asset purchase agreement.[3]

In payment of a portion of the purchase price, the debtor gave Devin a non-interest bearing promissory note dated May 15, 2009 in the amount of $225,000, payable within sixty months of execution. The promissory note refers to "collateral given to the Lender to secure this Note," thereby indicating that the parties understood that the loan was to be collateralized. The note does not, however, identify specific collateral or contain any language affirmatively granting to Devin a security interest.

The parties signed a pledge agreement whereby the debtor agreed to pledge its liquor license to Devin as security for its obligations under the promissory note. The parties agree that neither party received approval of the pledge in accordance with Mass. Gen. Laws ch. 138, § 23.

Section 5 of the asset purchase agreement, entitled "Security Documents," referring to the promissory note, commercial lease and liquor license, provides that "said Note and Commercial

---

[2] The promissory note indicates that the liquor license was not issued in Devin's name, but rather in the name of "B&D Restaurant Group, LLC." This discrepancy is not germane to the outcome of this matter.

[3] While the schedule attached to the asset purchase agreement included Devin's "Full Service Liquor License," the liquor license was not included on the schedule attached to the bill of sale. According to the affidavit of William Cunningham, a member of Devin, the transfer of the liquor license was approved by the necessary governmental authorities. As this approval would have completed the transfer of the liquor license to the debtor, it is clear that the debtor became the licensee of the liquor license despite the discrepancy between the bill of sale and the asset purchase agreement.

3

Lease Agreement shall be secured by a standard form UCC Security Agreement and perfected by a standard form UCC Financing Statement [and] a pledge against the Full Beverage Liquor License approved by the Town of Maynard. . . ." No agreement purporting to be a "UCC Security Agreement" or any similarly-titled document was introduced into the record of this case nor has there been any allegation that such an agreement was entered into.

Devin prepared a financing statement in accordance with Mass. Gen. Laws ch. 106, the Massachusetts version of the Uniform Commercial Code (the "UCC"), signed by Donna L. Cunningham, the manager of Devin, which contained a rider listing as collateral many of the debtor's assets, including its "licenses, permits and approvals." Devin recorded the financing statement on May 19, 2009 with the secretary of the Commonwealth of Massachusetts.

### Position of the Parties

Devin argues that the agreements summarized above, when taken as a whole, served to create a security interest in its favor in those assets listed in the rider to the financing statement, which security interest was duly perfected upon the recording of the financing statement with the secretary of the commonwealth. The trustee argues that the debtor failed to grant Devin a security interest in any of its assets[4] other than the liquor license and that with respect to the liquor license Devin failed to properly perfect its security interest. The trustee asserts his status as a hypothetical lien creditor under Bankruptcy Code § 544 to seek to avoid Devin's security interest.

---

[4] In the complaint, which was filed before the case was converted from Chapter 11 to one under Chapter 7, the debtor alleged that Devin's security interest is unperfected and is therefore voidable by the debtor, in its capacity as a debtor in possession. In his motion for partial summary judgment the trustee appears to have adopted a different theory of the case arguing that Devin's security interest in the Physical Assets is invalid, not merely unperfected.

4

**Applicable Statutes**

Bankruptcy Code § 544 endows a trustee with so-called "strong-arm" powers that enable the trustee to avoid certain prepetition liens against property of the debtor. *See In re Millivision, Inc*, 474 F.3d 4, 5 (1st Cir. 2007). Section 544(a) confers on a trustee the right to seek to avoid any transfer of property or obligation incurred by a debtor that is voidable by the holder of a judicial lien or execution against the debtor or a bona fide purchaser for value of real estate as of the date of case commencement.

The UCC governs the creation of security interests. To be effective, a security interest must have attached to the collateral in question. UCC § 9-308(a). Unless an agreement between the parties provides otherwise, a security interest attaches to collateral only when it becomes enforceable against a debtor with respect to the collateral. § 9-203(a). A security interest in a debtor's assets becomes enforceable when (i) value has been given, (ii) the debtor has rights in the collateral or the power to transfer the rights and (iii) the debtor has authenticated a security agreement that provides a description of the collateral. § 9-203(b).[5] In order for a security interest to have priority over subsequent secured creditors, it must be perfected. § 9-317(a). An attached security interest is perfected upon the filing of a financing statement in the appropriate centralized registry. §§ 9-308(a) and 9-310(a).

With respect to the liquor license, Mass. Gen. Laws. ch. 138, § 23 permits a licensee to pledge its interest in the license as collateral for a loan "provided approval of such loan and pledge

---

[5] UCC § 9-203(b)(3) provides that a security interest in certain types of collateral may be enforceable without an authenticated security agreement. The parties in this proceeding agree, however, that an authenticated security agreement is required for a security interest to be enforceable with respect to the collateral involved in this dispute.

5

is given by the local licensing authority and the [Massachusetts Alcoholic Beverage Control Commission (the "ABCC")]."

## Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056. "A 'genuine' issue is one supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party. Material facts are those having the potential to affect the outcome of the suit under the applicable law." *In re McCabe Group*, 424 B.R. 1, 4 (Bankr. D. Mass. 2010) (internal citations and footnotes omitted). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Affidavits in support of or in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

## Discussion

Whether the trustee may avoid Devin's security interest in the debtor's property requires a determination as to whether the security interest is enforceable with respect to the collateral under the three-part test of UCC § 9-203(b). There is no dispute that by loaning money to the debtor, Devin gave value to the debtor in exchange for a security interest in both the Physical Assets and

6

the liquor license, thereby satisfying the first test for enforceability. *See, e.g., Fields v. Rockland Trust Co.*, 1990 WL 10092031, *6 (Mass. Land Ct.). Applying the remaining tests under § 9-203(b) requires examining the Physical Assets and liquor license separately.

With respect to the Physical Assets, there is no dispute that having acquired those assets by way of the bill of sale, the debtor had sufficient "rights in the collateral" to satisfy the second requirement for enforceability under § 9-203(b). *See Trust Co. Bank v. Gloucester Corp.*, 419 Mass. 48, 50-51, 643 N.E.2d 16, 17-18 (1994) ("rights in the collateral" refers to the debtor's gaining possession of the collateral pursuant to agreement giving him any interest other than naked possession). It is the third requirement, for an authenticated security agreement, that underpins the trustee's position that Devin's security interest in the Physical Assets is unenforceable.

The drafters of the UCC included the requirement to authenticate a security agreement to prevent disputes from arising over which assets are intended to serve as collateral. *See Baystate Drywall, Inc. v. Chicopee Sav. Bank*, 385 Mass. 17, 20-21, 429 N.E.2d 1139, 1141 (1982). Massachusetts law does not require that an agreement be entitled security agreement as long as it contains a description of the collateral and it evidences an intent to create a security interest in that collateral. *Id* at 19-21. In fact, the security agreement may consist of several different documents that "collectively establish an intention to grant a security interest" in the collateral identified in the documents. *In re Rowe*, 369 B.R. 73, 75 (Bankr. D. Mass. 2007); *Baystate Drywall*, 385 Mass. at 21. If one such document lists the collateral to be secured, it must contain some granting language expressing the debtor's intent to create a security interest. *Id*. at 76-77 (citing *In re Modafferi*, 45 B.R. 370, 372-73 (Bankr. S.D.N.Y 1985)).

7

None of the transaction documents in the present case (except the pledge agreement, which applies only to the liquor license) contains language in which the debtor grants a security interest to Devin.  The asset purchase agreement and the related bill of sale identify the assets purchased by the debtor, but neither contains a grant of a security interest or indicates which, if any, of those assets are intended to become collateral for Devin's loan.  In fact, the asset purchase agreement states that the relevant grant will be by means of a separate security agreement.  No such agreement has been produced.  The only document in the record that identifies collateral is the financing statement, but it was signed by Devin only and cannot possibly be construed to reflect the debtor's intent to grant a security interest in such collateral.  Without an authenticated security agreement, the secured transaction between the debtor and Devin fails the third test for enforceability under § 9-203(b).  Accordingly Devin's security interest in the Physical Assets never attached as required by § 9-203(a).

With respect to the pledge of the liquor license, the debtor authenticated the pledge agreement by signing it, thus satisfying the third requirement for enforceability under § 9-203(b). It does not appear, however, that the debtor had sufficient rights in the liquor license to satisfy the second test of the statute.  Mass. Gen. Laws. ch. 138, § 23 requires that a debtor must receive approval from both the local licensing authority and the state ABCC before a liquor license may be pledged.  In *In re Dalcon*, 120 B.R. 620 (Bankr. D. Mass. 1990), the court held that a debtor must comply with both the UCC and ch. 138, § 23 in order to effectuate an enforceable pledge of a liquor license.  The court in *Hillbilly Ranch, Inc. v. Kahn (In re Wible)*, 42 B.R. 622 (Bankr. D. Mass. 1984) determined that the alleged security interest in a liquor license was invalid when the

8

debtor failed to obtain the necessary governmental approvals even though the parties did everything required under the UCC to create and perfect the security interest in the liquor license.

These and other cases on this subject rely on a 1976 amendment to Mass. Gen. Laws ch. 138, § 23. Prior to that amendment, it was accepted that the holder of a liquor license had no property rights in the license. So for example, the state could revoke an outstanding liquor license without violating the licensee's due process rights. *Opinion of the Justices to the House of Representatives*, 368 Mass. 857, 863, 333 N.E.2d 414, 419 (1975). The 1976 amendment created a limited property right in favor of a liquor licensee by permitting the licensee to pledge the license as collateral for a loan, but only with the approval of the licensing authorities. *Hillbilly Ranch*, 42 B.R. at 624. Thus a debtor never acquires independent rights in a Massachusetts liquor license for purposes of satisfying UCC § 9-201(b)(ii) unless and until there is a pledge and that pledge has been approved by the required authorities under Mass. Gen. Laws ch. 138, § 23. As the debtor in this case failed to secure the necessary governmental approvals to pledge the liquor license to Devin, it did not acquire "rights in the collateral" within the meaning of § 9-203(b)(ii). Devin's security interest in the liquor license was, therefore, never enforceable against the debtor, and thus did not attach to the collateral.

Devin alleges that the debtor and its principals fraudulently misrepresented that they had obtained the necessary license authority approvals, and because Devin reasonably relied on these representations, I should deem its security interest in the liquor license enforceable so as not to reward the debtor for its fraudulent conduct. Devin does not provide any authority that would enable me to disregard the express terms of Mass. Gen. Laws ch. 138, § 23 and find that the pledge was valid despite the failure to comply with the statute. Whether or not the debtor engaged in

9

fraudulent conduct has no bearing on the validity of Devin's security interest, especially since Devin could have independently verified the status of its liquor license pledge by consulting the public records maintained by the ABCC. *See*, *e.g.*, *Millivision*, 474 F.3d at 6.

## Conclusion

In light of the foregoing, I will deny Devin's motion for summary judgment and grant in part the trustee's motion for summary judgment determining that Devin has no security interest in the debtor's assets. The remaining portion of the trustee's motion for summary judgment seeking to avoid Devin's liens pursuant to Bankruptcy Code § 544 is thus moot. The trustee's motion for summary judgment does not include a request for an order determining the amount of Devin's unsecured claim. Such a determination must wait for further proceedings. Separate orders shall enter.

Dated: May 20, 2011                                                                 By the Court,

                                                                                    Melvin S. Hoffman
                                                                                    U.S. Bankruptcy Judge